James B. Panther (SBN 55987)
INTERNATIONAL LAW GROUP, A.P.C.
2794 Gateway Road
Carlsbad, CA 92009
Telephone: (760) 602-6227
Facsimile: (877) 428-4096

Attorneys for Plaintiffs
JACK D. HARRISON and NAOMA HARRISON

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK D. HARRISON AND NAOMA HARRISON,<br><br>Plaintiffs,<br><br>v.<br><br>BANKERS STANDARD INSURANCE COMPANY, ACE PROPERTY AND CASUALTY INSURANCE COMPANY, AMERICAN FAMILY MUTUAL INSURANCE COMPANY AND BBVA COMPASS INSURANCE AGENCY, INC.; AND DOES 1 THROUGH 50<br><br>Defendants. | Case No.: **'13CV1682 DMS JMA**<br><br>**COMPLAINT**<br><br>**JURY DEMANDED** |

Plaintiffs, JACK D. HARRISON and NAOMA HARRISON (collectively "Harrisons") allege against Defendants Bankers Standard Insurance Company, Ace Property And Casualty Insurance Company, American Family Mutual Insurance Company and BBVA Compass Insurance Agency, Inc. as follows:

**PARTIES AND JURISDICTION**

1. Plaintiffs Harrisons, are individuals who currently reside in Rancho Santa Fe, California.

COMPLAINT - 1

2. Defendant Bankers Standard Insurance Company ("Bankers") is a Pennsylvania Corporation with its principal place of business in Philadelphia, Pa. also doing business in California.

3. Defendant Ace Property and Casualty Insurance Company ("Ace") is a Pennsylvania Corporation with its principal place of business in Philadelphia, Pa., doing business in California. Plaintiffs are informed and believe that Bankers and Ace are related companies.

4. Plaintiffs are informed and believe that Defendant American Family Mutual Insurance Company ("American") is an entity with its principal place of business in Madison, Wisconsin.

5. Plaintiffs are informed and believe that Defendant BBVA Compass Insurance Agency, Inc.("BBVA"), is a private company whose home office is in Houston, Texas.

6. The court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1).

7. The citizenship of the Harrisons is diverse from that of Bankers, Ace, American and BBVA.

8. The amount in controversy exceeds $75,000 exclusive of interest and costs. The Harrisons seek insurance coverage under two different insurance policies for the theft of virtually all of their personal property stolen in transit while moving from Colorado to California.

9. Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) in that a substantial part of the events giving rise to the claim occurred and/or one of the real properties is situated in Southern California.

## **GENERAL ALLEGATIONS**

10. On or about May 26, 2011, Defendant American issued and/or renewed a Gold Star Special Deluxe home insurance policy bearing policy number 05BS-9430-01-75-PHGS-CO for the period commencing May 26, 2011 to

September 30, 2011.  American claimed it had a property damage policy limit of $269,100. However, a policy limits demand was sent to American and it refuse to pay so American is liable for the full amount of the claim.

11. The insurance was related to the home then owned by the Harrisons in Colorado, and included coverage for personal property including while in transit to a new home.

12. On or about July 20, 2011, Defendants Bankers and Ace issued a home insurance policy number 268-03-86-69H, an auto, and umbrella policy. Defendants Bankers and Ace also provided specific coverage for Valuables, policy number 268-03-86-69V for the period July 20, 2011 to July 20, 2012. These policies were related to the Harrisons new home they were moving to in Rancho Santa Fe. (The three insurance policies collectively are "Insurance Policies".)

13. The Bankers and Ace policies covered personal property for over $2 million.

14. All premiums due on the Insurance Policies were paid in full by the Harrisons.

15. On or about July 29, 2011, the Harrisons had rented a truck to move virtually all their personal belongings from Colorado to California with their personal vehicle being towed on a trailer.

16. The Harrisons were assured by Defendants' agents they had full coverage and did not need to purchase additional insurance from the truck rental company.

17. The Harrisons stopped overnight in New Mexico where the truck with all their belongings in it and car was stolen and reported to the police.

18. The Harrisons promptly made claims on the Defendants under the Insurance Policies. The value of their personal property was over $700,000.

19. Defendants did an investigation including taking two sworn statements from Mr. Harrison under oath.

20. It was not until June, 2012 that Ace and Bankers made partial payment of the claim stating the Harrisons should collect the rest from American.

COMPLAINT - 3

21. Subsequently, the Harrisons through counsel made a policy limits demand on American and a demand on Ace for the balance of the claim.

22. To date none of the Defendants have paid the claim in full and American has not paid anything.

### SPECIFIC FACTS AS TO ACE/ BANKERS/BBVA (ACE")

23. On or about August 4, 2011 Ace acknowledged receipt of the claim and began to investigate. The Harrisons provide all information reasonably requested with a short period of time after the request.

24. On or about March 2012 Ace arranged for a sworn statement from the Harrisons and the Harrisons subsequently gave such detailing all items on which their claim was based.

25. In June 2012 Ace paid the Harrisons for their jewelry under the special "Valuables" policy but refused to pay additional sums.

26. In June 2012, almost a year after the claim was made, Ace for the first time, informed the Harrisons that their coverage was limited to 10% of the policy limits under a special exclusion limiting coverage to property located at their new home or being moved from their new home.

27. The Harrisons had purchased the Ace policies from BBVA, its agent, with coverage up to $2.66 million with premiums of over $9,000 per year. The Harrisons told the agent that they were specifically purchasing the new policy for the move to San Diego. The agent, Paula Brevig in the course and scope of her employment, and who was the authorized employee of BBVA, assured them they had full coverage and did not say anything about the 10% limitation ("Limitation), or that their policy limits for their claim was $266,000 and not $2.66 million. The Harrisons thus believed her that they had full coverage for all of their personal property during the move. The Harrisons asked if they

needed to obtain additional insurance from the truck rental company which was offered to them, to be sure they had full coverage and Ace's agent said no.

28. The Ace policy states with regard to personal property: "We cover personal property owned or used by you while it is anywhere in the world". It further states a limit under certain conditions of 10% of property value. But, it goes on to state there is coverage *without* the Limitation as follows: "This special limit ("Limitation") does not apply to personal property moved or being moved from the residence premises to a residence you newly acquired during the policy period within the first 60 days after moving property there."

29. The Harrisons believed this provided them with coverage during their move.

30. At best the language in the policy is vague and misleading such that it should be strictly construed against Ace to provide for coverage.

31. When the Harrisons purchased the Ace policy, no one explained any limits on coverage during the move. If they had, the Harrisons would have purchased additional coverage.

32. In May 2012, Ace further notified Harrison that it wanted to take a sworn statement from them, which it did.

33. In July, 2012 Ace acknowledged that the claim was supported for more than $266,000, and paid one-half of what they stated was the limit of $266,000 (10% of $2.66 million.) Ace paid $133,000 also on the basis that the Harrisons had coverage from American.

34. On or about March 2013, the Harrisons through counsel advised Ace again the total claim was for $722,456.49 as detailed documentation and testimony had been given supporting such. The Harrisons demanded that Ace pay an additional $455,953.47 which was the total claim minus what Ace had paid and requested Ace seek reimbursement from American. Ace had already offered to establish communication with American to resolve the proportionate share of the claim.

35. In April 2013, Ace acknowledged the demand promising a response within 15 days.

36. In May, 2013, Ace notified the Harrison's counsel that Ace had retained an independent adjuster to do an investigation and provide a report.

37. In June 2013, almost 2 years after the claim was made, the Harrisons notified them through counsel of their intent to file suit prior to the end of July 2013 unless the claim was settled.

38. On or about July 16, 2013, Ace through its San Diego counsel "Tyson and Mendes" sent a letter requesting further information about what Ace had done instead of contacting Ace directly.

## SPECIFIC FACTS AS TO AMERICAN

39. On or about July 2011, American acknowledged receipt of the claim.

40. Between July 2011 and January 2013 American did almost nothing to investigate the claim nor did it offer any payment violating its obligation to act in good faith.

41. Up until January 13, 2013, American was aware of the actions of Ace and Ace stated it could coordinate with American.

42. In January 2013, American notified Harrisons' counsel that a sworn statement would be taken with a court reporter by attorney Dylan Lewis even though a statement had already been taken by Ace and was available to American.

43. On or about March 15, 2013, the Harrisons through counsel sent a policy limits demand explaining why it should be paid.

44. American did not respond except to further arrange the taking of a sworn statement, which it wanted to delay for many months.

45. On or about May 2013, the Harrisons provided the sworn statement because the Harrisons' counsel insisted it be done sooner than as proposed by American.

46. On or about May 2013, American advised the Harrisons for the first time, that they were hiring an independent insurance adjustment company to investigate the claim.

47. On or about July 2, 2013, American stated that Tim Kelly who was handling the claim was meeting with his supervisor on June 27, 2013 and would promptly contact Harrisons' counsel thereafter.

48. On or about July 2, 2013, the Harrisons through counsel advised American that the Harrisons had been contacted by a company called Enservio to investigate the claim. It was now two years since the claim was made and American had paid nothing. They claimed they now would start to investigate with Enservio.

## FIRST CAUSE OF ACTION
### (Declaratory Judgment Against Ace and American)

49. The Harrisons incorporate by reference all of the allegations above.

50. Defendants Ace and American have a duty to reimburse the Harrisons for the costs incurred and claims made in connection with the theft of their personal property in the total amount of $722,456.49

51. The Insurance Policies apply to the claims of the Harrisons. The Defendants should have promptly paid the above amount and have failed and refused to do so.

52. The Harrisons seek a judgment that Ace and American provide full coverage for the claim and have an obligation to pay $722,456.49.

## SECOND CAUSE OF ACTION
### (Breach of Contract Against Ace and American)

53. The Harrisons incorporate all of the above allegations by reference.

54. At all relevant times the Insurance Policies were in full force and effect.

55. The loss of the Harrisons personal property is a covered loss for the full amount of replacement value.

56. The Harrisons have complied with all the conditions of the Insurance Policies.

57. Defendants have failed and refused to fully compensate the Harrisons for their loss.

58. As a direct result the Harrisons have been damaged in the amount of the current replacement value of their property in an amount exceeding $455,953.47.

## THIRD CAUSE OF ACTION

**(For Violations of California Unfair Insurance Practices Act B&P Code §17200 Against Ace and American)**

59. Plaintiffs incorporate each of the allegations set forth above as though set forth herein.

60. The insurance business is highly competitive. Defendants advertise heavily.

61. Defendants when trying to sell insurance state their coverage is broad and they will favor the insured's and promptly and efficiently handle claims.

62. For example American states:

"Your Claim Will Be Completed Promptly

After a prompt and fair assessment, your claim will be completed as quickly as possible. Our team members will contact you as necessary, and you're always encouraged to call us at 1-800-MYAMFAM (1-800-692-6326) when you have questions or concerns."

63. For example Ace states:

"Claims play a critical role in an insurance company. Our clients buy a promise from us, so when a loss occurs we strive to make a difficult situation as positive as possible. ACE is committed to delivering a claims experience with a consistent level of service and satisfaction. Backed by consistently high ratings from the industry's principal rating agencies, ACE is financially strong and able to meet our obligations to our customers."

64. These statements are false in that Defendants don't make a prompt and fair assessment of claims or strive to make a difficult situation as positive as possible.

65. The conduct of defendants as alleged herein violates the California Unfair Practices Act, B&P Code section 17200.

## FOURTH CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants – First Party Claim)**

66. Plaintiffs hereby re-allege and incorporate the preceding paragraphs as though set forth in full.

67. There is in every insurance contract, an implied covenant by each party not to take any step or refuse to deprive the other party of the benefit of the contract.

68. By among other things, engaging in the acts and omissions alleged above, Defendants breached the implied covenant of good faith and fair dealing.

69. As a direct and proximate result, Plaintiffs have sustained damages, including without limitation the policy benefits of an amount exceeding $455,953.47 plus interest at the legal rate from the date of Plaintiffs' claim.

## FIFTH CAUSE OF ACTION

**(Fraud Against Ace and BBVA)**

70. Plaintiffs hereby re-allege and incorporate the preceding paragraphs as though set forth in full.

71. The plaintiffs stated to BBVA, the agent of Ace, that they wanted to be sure they had full coverage for the move they were making from Colorado to California and asked if they should purchase additional insurance from the truck rental company they were using.

72. BBVA's employee, Paula Brevig, told the Plaintiffs they would have full coverage and it would not be necessary to purchase additional insurance.

73. This was false since the Ace policy purported to have a special limit of 10% of the amount of the claim under certain conditions when moving.

74. Plaintiffs reasonable relied on the representations of Defendants and did not purchase any other insurance.

75. In spite of the statements of BVVD, Defendant Ace subsequently and continues to claim there is not full coverage.

76. As a direct and proximate result, Plaintiffs have sustained damages, including without limitation the policy benefits of an amount exceeding $455,953.47 plus interest at the legal rate from the date of Plaintiffs' claim.

## SIXTH CAUSE OF ACTION

**(Negligent Misrepresentation Against Ace and BVVD)**

77. Plaintiffs hereby re-allege and incorporate the preceding paragraphs as though set forth in full.

78. BVDD through its employee represented to Plaintiffs that an important fact was true; that they had full insurance coverage for their move.

79. BVDD's representation was not true;

80. BVDD's employee may have honestly believed that the representation was true but she had no reasonable grounds for believing the representation was true when she made it;

81. Defendants intended that the Harrisons rely on this representation;

82. Plaintiffs did reasonably rely on the representation;

83. Plaintiffs' reliance on the representation was a substantial factor in causing their harm.

84. As a direct and proximate result, Plaintiffs have sustained damages, including without limitation the policy benefits of an amount exceeding $455,953.47 plus interest at the legal rate from the date of Plaintiffs' claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1. For all recoverable damages according to proof for Defendant Ace and American's breach of contract of not less than $455,953.47 plus interest at the legal rate from the date of Plaintiffs' claim.

2. For all recoverable damages according to proof in the amount of not less than $455,953.47 plus interest at the legal rate from the date of

Plaintiffs' claim for the Defendants' first party insurer bad faith, and fraud, including punitive damages.

3. For an order declaring:

    a. The Insurance Policies obligate Defendants Ace and American to pay the claim in the full amount of the replacement value of the property regardless of any special limitation or policy limit in the American policy;

    b. The Plaintiffs have complied with their duties under the Insurance Policies or, in the event Plaintiffs did not comply with their duties such noncompliance does not prevent plaintiffs from recovering under the Insurance Policies.

4. For emotional distress.

5. For attorneys' fees incurred to force Defendants to pay the policy benefits (Brandt fees).

6. For costs incurred herein.

7. For such other relief as the court deems just and proper.

PLAINTIFFS DEMAND A JURY TRIAL

Date: July 18, 2013        INTERNATIONAL LAW GROUP, A.P.C.

/s/ James B. Panther
James B. Panther
Attorney for Plaintiffs
JACK D. HARRISON and NAOMA HARRISON