James B. Panther (SBN 55987)
INTERNATIONAL LAW GROUP, A.P.C.
2794 Gateway Road
Carlsbad, CA 92009
Telephone: (760) 602-6227
Facsimile: (877) 428-4096

Attorneys for Plaintiffs
JACK D. HARRISON and NAOMA HARRISON

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK D. HARRISON AND NAOMA HARRISON,<br><br>Plaintiffs,<br><br>v.<br><br>BANKERS STANDARD INSURANCE COMPANY, BBVA COMPASS INSURANCE AGENCY, INC.; AND DOES 1 THROUGH 50,<br><br>Defendants. | Case No.: 13CV1682 DMS JMA<br><br>**FIRST AMENDED COMPLAINT**<br><br>**JURY DEMANDED**<br><br>**[Filed concurrently with Plaintiffs' Notice of Lodgment]** |

Plaintiffs, JACK D. HARRISON and NAOMA HARRISON (collectively "Harrisons") allege against Defendants Bankers Standard Insurance Company, American Family Mutual Insurance Company and BBVA Compass Insurance Agency, Inc. as follows:

## PARTIES AND JURISDICTION

1. Plaintiffs Harrisons, are individuals who currently reside in Rancho Santa Fe, California.

2. Defendant Bankers Standard Insurance Company ("Bankers") is a Pennsylvania Corporation with its principal place of business in Philadelphia, PA doing business in California.

3. Plaintiffs are informed and believe that Defendant American Family Mutual Insurance Company ("American") is an entity with its principal place of business in Madison, Wisconsin.

4. Plaintiffs are informed and believe that Defendant BBVA Compass Insurance Agency, Inc. ("BBVA") is a private company whose home office is in Houston, Texas.

5. The court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1).

6. The citizenship of the Harrisons is diverse from that of Bankers and BBVA.

7. The amount in controversy exceeds $75,000 exclusive of interest and costs. The Harrisons seek insurance coverage under two different insurance policies for the theft of virtually all of their personal property stolen in transit while moving from Colorado to California.

8. Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) in that a substantial part of the events giving rise to the claim occurred and/or one of the real properties is situated in Southern California.

## GENERAL ALLEGATIONS

9. On or about May 26, 2011, Defendant American issued and/or renewed a Gold Star Special Deluxe home insurance policy bearing policy number 05BS-9430-01-75-PHGS-CO for the period commencing May 26, 2011 to September 30, 2011. American claimed it had a property damage policy limit of $269,100.

10. The insurance was related to the home then owned by the Harrisons in Colorado, and included coverage for personal property including while in transit to a new home.

11. On or about July 20, 2011, Defendant Bankers issued a home insurance policy number 268-03-86-69H, an auto, and umbrella policy. Defendant Bankers also provided specific coverage for Valuables, policy number 268-03-86-69V for the period July 20, 2011 to July 20, 2012. This policy was related to the Harrisons new home they were moving to in Rancho Santa Fe. The three insurance policies collectively are "Insurance Policies". (See

Exhibits "A" through "C" to "Notice of Lodgment" filed concurrently with this First Amended Complaint).

12. Bankers policy covered the Harrisons' personal property for limits of $2,419,000.

13. The Harrisons were assured by Defendants' agents they had full coverage and did not need to purchase additional insurance from the truck rental company.

14. All premiums due on the Insurance Policies were paid in full by the Harrisons.

15. On or about July 29, 2011, the Harrisons had rented a truck to move virtually all their personal belongings from Colorado to California with their personal vehicle being towed on a trailer.

16. The Harrisons stopped overnight in New Mexico where the truck with all their belongings in it and car was stolen and reported to the police.

17. The Harrisons promptly made claims on the Defendants under the Insurance Policies. The Harrisons provided their required proof of loss and supporting documentation to Bankers in the sum of $722,456.49.

18. The Defendants did an investigation which included taking an Examination Under Oath from Mr. Harrison.

19. Bankers completed its investigation and at no time has disputed or questioned the Harrisons' proof of loss or supporting documentation.

20. It was not until June, 2012 that Bankers made partial payment of the claim stating the Harrisons should collect the rest from American.

21. Subsequently, the Harrisons through counsel made a policy limits demand on Bankers.

22. To date none of the Defendants have paid the claim in full and American has not paid any amount.

**SPECIFIC FACTS AS TO BANKERS/BBVA ("Bankers")**

23. Bankers and BBVA are hereinafter collectively referred to as "Bankers".

24. On or about August 4, 2011 Bankers acknowledged receipt of the claim.

25. On or about March 2012, Bankers arranged for a sworn statement from Mr. Harrison and he subsequently gave such detailing all items on which their claim was based.

26. In June 2012, Bankers paid the Harrisons for their jewelry under the special "Valuables" policy but refused to pay additional sums.

27. In June 2012, almost a year after the claim was made, Bankers, for the first time, informed the Harrisons that their coverage was limited to 10% of the policy limits under a special exclusion limiting coverage to property located at their new home or being moved from their new home.

28. The Harrisons had purchased the Bankers policies from BBVA, its agent with coverage up to $2.66 million with premiums of over $9,000 per year. The Harrisons told the BBVA agent that they were specifically purchasing the new policy for the move to San Diego. The BBVA agent, Paula Brevig, in the course and scope of her employment and who was the authorized employee of BBVA, assured them they had full coverage and did not say anything about the 10% limitation ("Limitation") or that their policy limits for their claim was $266,000 and not $2.66 million. The Harrisons thus believed her that they had full coverage for all of their personal property during the move. The Harrisons asked BBVA if they needed to obtain additional insurance from the truck rental company, which was offered to them, to be sure they had full coverage and Bankers' agent said "no".

29. The Bankers policy states with regard to personal property: "We cover personal property owned or used by you while it is anywhere in the world". It further states there is coverage *without* the Limitation as follows: "This special limit ("Limitation") does not apply to personal property moved or being moved from the residence premises to a residence you newly acquired during the policy period within the first 60 days after moving property there."

30. In this "limitation" and the exception to the limitation (therefore a grant of coverage) there is no restriction as to which "residence" the property is being moved from or to. The phrase "residence premises" is not limited to scheduled locations only but includes any residence of the insured. Had Bankers wished to limit coverage it could have used the word

- 4 -
FIRST AMENDED COMPLAINT

"scheduled residence premises" or "residence premises shown in the declaration."  Bankers never did so.  At the time of the loss, the Harrisons owned two residences (as defined by the policy), one in Colorado and another recently purchased in California.  At the very least, this limitation is ambiguous and should not be used to limit coverage from "worldwide".

31. The Harrisons believed this provided them with coverage during their move.

32. At best, the language in the policy is vague and misleading such that it should be strictly construed against Bankers to provide for coverage.

33. When the Harrisons purchased the Bankers policy, no one explained any limits on coverage during the move.  If they had the Harrisons would have purchased additional coverage.

34. In May 2012, Bankers further notified Harrisons that it wanted to take a sworn statement from them, which it did.

35. In July, 2012 Bankers acknowledged that the claim was supported for more than $266,000, and paid one-half of what they stated was the limit of $266,000 (10% of $2.66 million.)  Bankers paid $133,000 also on the basis that the Harrisons had coverage from American.  To the contrary, the policy expressly states:

> **6. Other Insurance And Service Agreement**
> If a loss covered by this policy is also covered by:
> **a.** Other insurance, we will pay only the proportion of the loss
> that the limit of insurance that applies under this policy bears to
> the total amount of insurance covering the loss . . .

36. Bankers' representation was false.  Pursuant to the clear and undisputed terms of the policy, Bankers was liable, at a minimum, for 90% of Harrisons' loss of $650,210.84.

37. On or about March 2013, the Harrisons through counsel advised Bankers again the total claim was for $722,456.49 as detailed documentation and testimony had been given supporting such.  The Harrisons demanded that Bankers pay an additional $455,953.47 which was the total claim minus what Bankers had paid previously and requested Bankers seek reimbursement from American.  Bankers had already offered to establish communication with American to resolve the proportionate share of the claim.

38. In April 2013, Bankers acknowledged the demand promising a response within 15 days.

39. In May, 2013, Bankers notified Harrisons' counsel that Bankers had retained an independent adjuster to do an investigation and provide a report.

40. In June 2013, almost 2 years after the claim was made, the Harrisons notified them through counsel of their intent to file suit prior to the end of July unless the claim was settled.

41. On or about July 16, 2013, Bankers through its San Diego counsel "Tyson and Mendes" sent a letter requesting further information about what Bankers had done instead of contacting Bankers directly.

42. On or about March 15, 2013, the Harrisons through counsel sent policy limit demands explaining why their claim should be paid. (See Exhibit "D" and Exhibit "E").

## FIRST CAUSE OF ACTION
### (Declaratory Judgment Against Bankers)

43. The Harrisons incorporate by reference all of the allegations above.

44. Defendant Bankers has a duty to reimburse the Harrisons for the costs incurred and claims made in connection with the theft of their personal property in the total amount of $722,456.49

45. The Insurance Policies apply to the claims of the Harrisons. The Defendants should have promptly paid the above amount and have failed and refused to do so.

46. The Harrisons seek a judgment that Bankers and American provide full coverage for the claim and have an obligation to pay $722,456.49.

## SECOND CAUSE OF ACTION
### (Breach of Contract Against Bankers)

47. The Harrisons incorporate all of the above allegations by reference.

48. At all relevant times the Insurance Policies were in full force and effect.

49. The loss of the Harrisons' personal property is a covered loss for the full amount of replacement value.

50. The Harrisons have complied with all the conditions of the Insurance Policies.

51. Defendants have failed and refused to fully compensate the Harrisons for their loss.

52. As a direct result, the Harrisons have been damaged in the amount of the current replacement value of their property in an amount exceeding $455,953.47.

## THIRD CAUSE OF ACTION

### (For Violations of California Unfair Insurance Practices Act B&P Code §17200 Against Bankers)

53. Plaintiffs incorporate each of the allegations set forth above as though set forth herein.

54. The insurance business is highly competitive. Defendants advertise heavily.

55. Defendants when trying to sell insurance state their coverage is broad and they will favor the insured's and promptly and efficiently handle claims.

56. For example Bankers states:

> "Claims play a critical role in an insurance company. Our clients buy a promise from us, so when a loss occurs we strive to make a difficult situation as positive as possible.  ACE [i.e. "Bankers"] is committed to delivering a claims experience with a consistent level of service and satisfaction.  Backed by consistently high ratings from the industry's principal rating agencies, ACE is financially strong and able to meet our obligations to our customers."

57. These statements are false in that Defendants don't make a prompt and fair assessment of claims or strive to make a difficult situation as positive as possible.

58. The conduct of defendants as alleged herein violates the California Unfair Practices Act, B&P Code section 17200.

## FOURTH CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants – First Party Claim)

59. Plaintiffs hereby re-allege and incorporates the preceding paragraphs as though set forth in full.

60. There is in every insurance contract, an implied covenant by each party not to take any step or refuse to deprive the other party of the benefit of the contract.

61. By among other things, engaging in the acts and omissions alleged above, Defendants breached the implied covenant of good faith and fair dealing.

62. As a direct and proximate result, Plaintiffs have sustained damages, including without limitation the policy benefits of an amount exceeding $455,953.47 plus interest at the legal rate from the date of Plaintiffs' claim.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1. For all recoverable damages according to proof for Defendant Bankers' breach of contract of not less than $455,953.47 plus interest at the legal rate from the date of Plaintiffs' claim.

2. For all recoverable damages according to proof in the amount of not less than $455,953.47 plus interest at the legal rate from the date of Plaintiffs' claim for the Defendants' first party insurer bad faith and punitive damages.

3. For an order declaring:
   a. The Insurance Policies obligate Defendants Bankers to pay the claim in the full amount of the replacement value of the property regardless of any special limitation or policy limit in the American policy;
   b. The Plaintiffs have complied with their duties under the Insurance Policies or, in the event Plaintiffs did not comply with their duties such noncompliance does not prevent plaintiffs from recovering under the Insurance Policies.

4. For emotional distress.

5. For attorneys' fees incurred to force Defendants to pay the policy benefits (Brandt fees).

1       6.     Punitive damages.

2       7.     For costs incurred herein.

3       8.     For such other relief as the court deems just and proper.

4       PLAINTIFFS DEMAND A JURY TRIAL

6   Date: November 21, 2013         INTERNATIONAL LAW GROUP, A.P.C.

7         /s/ James B. Panther
8         James B. Panther
        Attorney for Plaintiffs
9         JACK D. HARRISON and NAOMA HARRISON

# PROOF OF SERVICE

## Harrison, et al. v. Bankers Standard Insurance Company, et al,,
## 3:13-cv-01682-DMS-JMA

At the time of service, I was over 18 years of age and not a party to this action. My business address is 2794 Gateway Road, Carlsbad, California 92009. On the date indicated below, I served the following document:

**FIRST AMENDED COMPLAINT**

by

- ☒ By United States Mail. I enclosed the document in a sealed envelope or package addressed to the persons at the addresses on the attached Service List and placed the envelope for collection and mailing, following our ordinary business practices. I am readily familiar with this business' practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid. I am employed in the county where the mailing occurred. The envelope or package was placed in the mail at Carlsbad, California.

- ☒ By E-Mail or Electronic Transmission. I hereby certify that on the date referenced below, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants listed on the attached service list. I did not receive, within a reasonable time after the transmission, and electronic message or other indication that the transmission was unsuccessful.

on the persons listed on the attached below:

| | |
|---|---|
| Joann Selleck, Esq.<br>COZEN O'CONNOR<br>501 West Broadway, Suite 1610<br>San Diego, CA 92101<br>Telephone: (619) 234-1700<br>Facsimile: (619) 234-7831 | Attorneys for Defendant<br>BANKERS STANDARD INSURANCE<br>COMPANY and ACE PROPERTY<br>CASUALTY INSURANCE COMPANY |
| Daniel S. Alderman, Esq.<br>ALDERMAN & HILGERS, LLP<br>888 South Figueroa Street, 16th Floor<br>Los Angeles, CA 90017<br>Tel: (213)992-8206<br>Fax: (213)992-3272 | Attorneys for Defendant AMERICAN<br>FAMILY MUTUAL INSURANCE<br>COMPANY |

Deborah S. Gershon, Esq.  
McGINNIS WUTSCHER BEIRAMEE LLP  
19200 Von Karman Avenue, Suite 750  
Irvine, CA 92612  
Tel: (661) 406-6857  
Fax: (866) 581-9302  

Attorneys for Defendant  
BBVA COMPASS INSURANCE AGENCY, INC.

***COURTESY COPY:***  
Judge Dana M. Sabraw  
U.S. DISTRICT COURT JUDGE  
333 West Broadway, Suite 1310  
San Diego, CA 92101  

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Carlsbad, California, on November 21, 2013.

/s/ Susan Vanderburgh  
Susan Vanderburgh