James B. Panther (SBN 55987)
INTERNATIONAL LAW GROUP, A.P.C.
2794 Gateway Road
Carlsbad, CA 92009
Telephone: (760) 602-6227
Facsimile: (877) 428-4096

Attorneys for Plaintiffs
JACK D. HARRISON and NAOMA HARRISON

FILED
May 14 2014
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  s/ ArianaF  DEPUTY

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACK D. HARRISON AND NAOMA HARRISON,<br><br>Plaintiffs,<br><br>v.<br><br>BANKERS STANDARD INSURANCE COMPANY; BBVA COMPASS INSURANCE AGENCY, INC.,<br><br>Defendants. | Case No.: 13CV1682 DMS JMA<br><br>**SECOND AMENDED COMPLAINT**<br><br>**JURY DEMANDED** |

Plaintiffs, JACK D. HARRISON and NAOMA HARRISON (collectively "Harrisons"; "Insureds"; or "Plaintiffs") by and through their attorneys and complain as follows:

## PARTIES AND JURISDICTION

1. The Harrisons are residents of Rancho Santa Fe, California.

2. Defendant Bankers Standard Insurance Company ("Bankers") is a Pennsylvania Corporation with its principal place of business in Philadelphia, PA doing business in California.

3. Plaintiffs are informed and believe that Defendant BBVA Compass Insurance Agency, Inc. ("BBVA") is a private company whose home office is in Houston, Texas.

4. The citizenship of the Harrisons is diverse from that of Bankers and BBVA.

5. The amount in controversy exceeds $75,000 exclusive of interest and costs. The Harrisons seek insurance coverage under two different insurance policies for the theft of virtually all of their personal property stolen in transit while moving from Colorado to California.

6. The court has original jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1).

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(a)(2) in that a substantial part of the events giving rise to the claim occurred and/or one of the real properties is situated in Southern California.

## BACKGROUND INFORMATION AND GENERAL ALLEGATIONS

8. ACE Private Risk Services ("ACE") handles the claims processing for Bankers.

9. Plaintiffs are informed and believe that American Family Mutual Insurance Company ("American Family") is an entity with its principal place of business in Madison, Wisconsin.

10. Mario Aragon Agency (hereinafter "Mario Aragon") is a corporation organized and existing under the laws of the state of Colorado and transacts business in Colorado.

11. On or about May 26, 2011, Defendant American Family issued and/or renewed a Gold Star Special Deluxe home insurance policy bearing policy number 05BS-9430-01-75-PHGS-CO for the period commencing May 26, 2011 to September 30, 2011. American Family claimed it had a property damage policy limit of $269,100.

12. The American Family policy was related to the home then owned by the Harrisons in Colorado, and included coverage for personal property.

13. Three insurance policies (collectively "Bankers Policies") issued by Bankers Standard Insurance, an ACE Group Company ("Bankers") guaranteed coverage up to $2,660,000. Pursuant to representations of BBVA, the Harrisons specifically purchased the policies from BBVA in order to provide adequate coverage for their move to San Diego.

(i) **Policy Number 268-03-86-69A**: an *auto* policy for the Policy Period from July 20, 2011 through July 20, 2012. (See Exhibit A of Notice of Lodgment; Docket No. 42)

(ii) **Policy Number 268-03-86-69H**: a *dwelling and umbrella* policy for the Policy Period from July 20, 2011 through July 20, 2012. (See Exhibit A of Notice of Lodgment; Docket No. 42)

(iii) **Policy Number 268 03-86-69V**: a *valuables* policy for the Policy Period from July 20, 2011 through July 20, 2012. (See Exhibit B of Notice of Lodgment; Docket No. 42)

14. The Harrisons met insurability requirements and satisfied premium obligations on all Bankers Policies.

15. The Bankers Policies covered the Harrisons' personal property for limits of $2,419,000.

16. The Harrisons were assured by Defendants' agents that they would obtain or provide them a policy to cover any risk of damage or loss in transporting all their personal property from Colorado to a new home purchased by them. Their agent, BBVA, informed Plaintiffs no insurance in addition to that purchased from BBVA would be necessary to cover possible loss or damage.

17. The Harrisons paid each and every premium due under the policy and met insurability requirements. In fact, all premiums for the Bankers Policies and American Family Mutual Insurance Company have been paid by the Harrisons. The Harrisons' policies issued through Bankers Standard Insurance Company and American Family Mutual Insurance Company were active and valid and the Plaintiffs understood from defendant, BBVA, that they had adequate coverage for any damage or loss to their personal property.

18. Accordingly, Plaintiffs relied on the existence of adequate coverage in their policy as communicated to them by their broker, BBVA.

19. The Harrisons were informed by Bankers and BBVA that the Bankers Policies would provide them coverage before, during and after their move from their home in Colorado to another home they owned in Rancho Santa Fe.

20. On July 28, 2011, the Harrisons rented a truck to move their personal belongings from their Colorado residence to California with their personal vehicle being towed on a car hauler.

21. On July 28, 2011, after eight hours of driving, the Harrisons stopped at a Holiday Inn near the airport in Albuquerque, New Mexico. The Harrisons parked the rental truck and car hauler in front of the hotel in a bright and visible area in plain view and next to the hotel.

22. On July 29, 2011, Mrs. Harrison awoke at 3:30 a.m. and saw that the rental truck was still there with the car trailer. At 6:30 a.m., when the Harrisons awoke to continue their trip, the truck and car on the trailer were gone. This incident was reported to the local police.

23. Between the years 2011 and 2013, the Harrisons submitted required proof of loss and supporting documentation to Bankers and American Family pursuant to the terms of their policies.

24. Between the years 2011 and 2013, the Harrisons were instructed by Bankers to purchase items to replace the stolen personal property and the Harrisons performed as requested.

25. The Defendants processed the Harrisons' claim, which included taking Mr. Harrison's Examination Under Oath.

26. Bankers completed its investigation and did not dispute or question the Harrisons' proof of loss or supporting documentation.

27. It was not until June 2012 that Bankers made a partial payment of the claim. No further payment has been made by Bankers; Bankers informed Plaintiffs to seek further claim payments from American Family.

28. The Harrisons, not recovering any further payments on their claims, through counsel, made a policy limits demand on Bankers and American Family in March 2013.

29. To date pursuant to terms of the insurance policies, Bankers Standard substantially underpaid Plaintiffs' claim while American Family failed to pay any amount.

## **SPECIFIC FACTS AS TO BANKERS/BBVA ("Bankers")**

30. Bankers and BBVA are hereinafter collectively referred to as "Bankers".

31. On or about August 4, 2011 Bankers acknowledged receipt of the claim.

32. On or about March 2012, Bankers arranged for a sworn statement from Mr. Harrison and he subsequently gave such detailing all items on which their claim was based.

33. In June 2012, Bankers paid the Harrisons for their jewelry under the special "Valuables" policy but refused to pay additional sums.

34. In June 2012, almost a year after the claim was made, Bankers, for the first time, informed the Harrisons that their coverage was limited to 10% of the policy limits under a special exclusion they said limited coverage.

35. The Harrisons had purchased the Bankers policies from BBVA, its agent with coverage up to $2,419,000. They paid premiums of over $9,000 per year. The Harrisons told the BBVA agent that they were specifically purchasing the new policy for the move to San Diego. An agent of BBVA, Paula Brevig, who was the broker for Plaintiffs and authorized agent of BBVA, assured them they had full coverage and did not say anything about any 10% limitation ("Limitation") or that their policy limits for their claim was $266,000 and not $2,419,000. The Harrisons were advised by BBVA that they had full coverage, which more than covered all of their personal property before, during and after the move. The Harrisons inquired of BBVA if they needed to obtain additional insurance from the truck rental company,

- 5 -
SECOND AMENDED COMPLAINT

which was offered to them to further assure themselves that they had full coverage and Bankers' agent said "no".

36. Plaintiffs are informed and believe that the language in the policy is vague, ambiguous and misleading such that it should be strictly construed against Bankers regarding coverage.

37. When the Harrisons purchased the Bankers Policies, no one explained any limits on coverage during the move. If they had, the Harrisons would have purchased additional coverage. The actions of BBVA and Bankers in not explaining limits on coverage was below the standard of due care of an insurance practitioner in the community, thus, causing Plaintiffs' damages set forth herein.

38. In May 2012, Bankers further notified Harrisons that it wanted to take a sworn statement from them, which it did.

39. On July 12, 2012 Bankers took the position that the Harrisons' claim was not supported for more than $266,000. Accordingly, it paid one-half of what they claimed was the limit of $266,000 (10% of $2,660,000). The policy states:

> **6. Other Insurance And Service Agreement**
> If a loss covered by this policy is also covered by:
> **a.** Other insurance, we will pay only the proportion of the loss
> that the limit of insurance that applies under this policy bears to
> the total amount of insurance covering the loss . . .

40. Pursuant to the clear and undisputed terms of the policy, Bankers is liable, at a minimum, for 90% of Harrisons' loss of $650,210.84.

41. On or about March 2013, the Harrisons through counsel advised Bankers again the total claim was for $722,456.49, less applicable sums already paid, as detailed documentation and testimony had been given supporting such. The Harrisons demanded that Bankers pay an additional $455,953.47 which was the total claim minus what Bankers had paid previously and requested Bankers seek reimbursement from American. Bankers had already agreed to communicate with American Family to resolve the proportionate share of the claim. However, no resolve was ever reached.

42. On or about March 15, 2013, the Harrisons, through counsel, made a demand on Bankers to pay the personal property claim which at the time totaled $722,456.49, less applicable sums already paid, with detailed supporting documentation and testimony. Bankers failed to process the balance of the payment due. (See <u>Exhibit D</u> and <u>Exhibit E</u> of Notice of Lodgment; Docket No. 42)

43. In April 2013, Bankers acknowledged the March 15, 2013 demand promising a response within 15 days, however, did not provide further response.

44. In May 2013, Bankers notified Harrisons' counsel that Bankers had retained an independent adjuster to perform an investigation and provide a report.

45. On June 6, 2013, almost two years after the claim was made, Harrisons' counsel notified Bankers of the Harrisons' intent to file suit prior to the end of July 2013.

46. In a letter dated July 16, 2013 from Bankers' coverage counsel, Tyson & Mendes claimed to have paid Bankers' "proportion of loss" payment when in fact it had severely underpaid the Harrisons' claim.

47. This 10% "coverage limit" was never disclosed to the Harrisons. To the contrary, they were always informed by their broker that they had adequate coverage to cover their risk of loss in transporting their personal property from Colorado to Rancho Santa Fe. Likewise, they were uninformed by Bankers of any coverage limitations until almost one year from the date of their loss.

**FURTHER LOSS INCURRED BY PLAINTIFFS
DUE TO NON-DISBURSEMENT OF CLAIMS**

48. Pursuant to the Bankers Policies, Plaintiffs performed duties after loss, specifically outlined in 1.i.(3) Duties After Loss (Page 18 of 30) to provide to Bankers of other insurance.

    a. Both American Family and Bankers have reneged and failed on their obligations to pay a "proportion of the loss" as set forth in their policies as follows:

- 7 -
SECOND AMENDED COMPLAINT

i. Bankers Policies provide coverage to the extent that if more than one policy exists, payment applies in a "proportion of the loss". Bankers Policies' "proportion of the loss" states:

> **6. Other Insurance And Service Agreement**
> If a loss covered by this policy is also covered by:
> **a.** Other insurance, we will pay only the proportion of the loss that the limit of insurance that applies under this policy bears to the total amount of insurance covering the loss . . .

ii. Pursuant to the American Family Policy, in its provision regarding "Other Insurance", the following applies[1]:

> If both this and other insurance apply to a loss, we will pay *our share*. Our share will be the proportionate amount that this insurance bears to the total amount of all applicable insurance.

(Emphasis added)

49. Pursuant to the American Family Policy, Plaintiffs performed duties after loss, specifically in 19.e.(4) Duties After Loss (Page 9 of 16) to notify American Family of other insurance.

50. Bankers and American Family had not disclosed to Plaintiffs any proportionate share allocation required under their policies.

## **FIRST CAUSE OF ACTION**
### **(Declaratory Judgment Against Bankers)**

51. The Harrisons incorporate by reference all of the allegations above.

52. Defendant Bankers has a duty to reimburse the Harrisons for the costs incurred and claim made in connection with the theft of their personal property in the total amount of $722,456.49, less applicable sums already paid.

---

[1] Paragraph 14, Page 9 of 16 under "CONDITIONS – SECTION I" of the American Family Policy

53. The Bankers Policies apply to the claim of the Harrisons. The Defendants should have promptly paid the above amount and have failed and refused to do so.

54. The Harrisons seek a judgment that Bankers and American Family provide full coverage for the claim and have an obligation to pay $722,456.49, less applicable sums already paid.

## SECOND CAUSE OF ACTION
### (Breach of Contract Against Bankers)

55. The Harrisons incorporate all of the above allegations by reference.

56. At all relevant times the Bankers Policies were in full force and effect.

57. The loss of the Harrisons' personal property is a covered loss for the full amount of replacement value.

58. The Harrisons have complied with all conditions of the Bankers Policies.

59. The defendants and each of them breached the contract by failing to and refusing to fully compensate the Harrisons for their loss.

60. Plaintiffs were not informed of any *condition of coverage* that allegedly shields or excuses Defendants' obligations to pay the full amount of Plaintiffs' loss.

61. As a direct result of the Bankers' breach of contract, the Harrisons have been damaged in the amount of the current replacement value of their property in an amount exceeding $455,953.47.

## THIRD CAUSE OF ACTION
### (For Violations of California Unfair Insurance Practices Act –
### B&P Code §17200; California Insurance Code §§ 790.03 and 790.034 –
### Against all Defendants)

62. Plaintiffs incorporate each of the allegations set forth above as though set forth herein.

63. The insurance business is highly competitive. Defendants advertise heavily.

64. Defendants when trying to sell insurance state their coverage is broad and they will favor the insured's and promptly and efficiently handle claims.

- 9 -
SECOND AMENDED COMPLAINT

65. For example Bankers states:

> "Claims play a critical role in an insurance company. Our clients buy a promise from us, so when a loss occurs we strive to make a difficult situation as positive as possible. ACE [i.e. "Bankers"] is committed to delivering a claims experience with a consistent level of service and satisfaction. Backed by consistently high ratings from the industry's principal rating agencies, ACE is financially strong and able to meet our obligations to our customers."

66. These statements are false in that Defendants have not made a prompt and fair assessment of claims or strive to make a difficult situation as positive as possible.

67. The conduct of defendants as alleged herein violates the California Unfair Practices Act, B&P Code section 17200.

## FOURTH CAUSE OF ACTION

### (Negligence - Against BBVA Compass – First Party Claim)

68. Plaintiffs hereby re-allege and incorporates the preceding paragraphs as though set forth in full.

69. Insureds explained the nature of their relocation to their insurance broker and the specific risk for which they sought coverage. The Insureds relied heavily on their broker to evaluate their options and to procure a policy providing the broadest possible coverage. The insurance broker advised the Insureds to purchase a policy underwritten by Bankers.

70. Prior to July 2011, defendant, BBVA, agreed to act as Plaintiffs' insurance broker, to satisfy all of the Plaintiffs' insurance needs in connection with their vehicles, real property, and personal property in moving from Colorado to their new home in Rancho Santa Fe. BBVA intended that Plaintiffs rely and Plaintiffs did rely, on BBVA's expertise, advice, and conduct in connection with procuring insurance for Plaintiffs' vehicles, real property, and personal property. As such, defendants were negligent as their conduct was below the standard of care in the community of insurance brokers. Defendants failed, omitted and neglected to inform Plaintiffs that the Bankers Policies contained limits on coverage related to the Plaintiffs' personal belongings.

71. In year 2011, Plaintiffs instructed BBVA to obtain insurance to provide coverage for any claims that may arise in connection with Plaintiffs moving from their Colorado home to their California home, including, advising BBVA that they sold their business and had bought a home in California. As such, BBVA acted as a fiduciary to carry out the instructions of Plaintiffs. In so doing, BBVA breached its fiduciary duty, thus causing damages as set forth herein.

72. Also in year 2011, Defendant, BBVA, advised Plaintiff that BBVA had obtained for Plaintiffs the type of coverage that Plaintiffs requested and needed from Bankers Standard and that the Bankers Standard policy provided coverage for their vehicle, dwelling, personal property and valuables. BBVA made these statements with the intent that Plaintiffs rely on them and Plaintiffs did reasonably rely on them in that they did not seek or obtain coverage elsewhere.

73. In doing the acts alleged herein, and at all other times alleged herein, BBVA was acting as dual agent and fiduciary for Plaintiffs and was acting within the scope of its agency in doing the acts alleged.

74. Plaintiffs are informed and believe and thereon allege that BBVA so negligently procured and structured the insurance that Plaintiffs failed to obtain the insurance for which they had bargained in good faith. BBVA was negligent.

75. Plaintiffs are informed and believe and thereon allege that when BBVA procured the policy of insurance for Plaintiffs, BBVA knew or should have known that the coverage needed by Plaintiffs was not included in the Bankers Policies.

76. Plaintiffs are informed and believe and thereon allege that BBVA negligently failed to follow Plaintiffs' instructions to obtain proper coverage under the instructions provided to it.

77. What BBVA obtained for the Insureds differed from the coverage the Insureds requested or the coverage they believed they purchased, either in type or amount.

78. Moreover, BBVA failed to properly advise the Insureds regarding the types and amount of insurance they should obtain.

79. Based on the broker's advice, the Insureds purchased the Bankers Policies. After the policies were issued, the Insureds asked the broker to confirm that the coverage was as broad as requested and the broker assured the Insured that it was.

80. The amount of Insureds' insurance coverage is inadequate to cover the Insureds' actual loss because BBVA failed and omitted to consider any coverage limitations.

81. Bankers and BBVA failed to meet the standard of care in the insurance community to inform Plaintiffs of possible exclusions to the Bankers Policies, which might affect the right to fully compensate them for losses they may sustain. Accordingly, Bankers and BBVA were negligent and breached their duty of due care to Plaintiffs which Plaintiffs reasonably relied upon, thus causing them substantial damages as set forth herein.

82. As a proximate result of the negligence of BBVA, Plaintiffs continue to be damaged, and that they have incurred attorney's fees and costs for personal counsel to protect their interests and response to any and all claims arising out of the July 29, 2011 loss, including personal counsel, defense fees and costs in *Harrison v. American Family Mutual Insurance Company et al.*; U.S. District Court, District of Colorado (Denver); Case No. 1:14-cv-00328-PAB and expenses and costs for counsel to present and pursue their claim for policy benefits against Bankers Standard.

## FIFTH CAUSE OF ACTION

**(Breach of the Implied Covenant of Good Faith and Fair Dealing Against All Defendants – First Party Claim)**

83. Plaintiffs hereby re-allege and incorporates the preceding paragraphs as though set forth in full.

84. By among other things, engaging in the acts and omissions alleged above, Defendants breached the implied covenant of good faith and fair dealing.

85. As a direct and proximate result, Plaintiffs have sustained damages, including without limitation the policy benefits of an amount exceeding $455,953.47 plus interest at the legal rate from the date of Plaintiffs' claim plus attorney fees and costs.

86. The Harrisons incorporate by reference all of the allegations above.

87. Plaintiffs are informed and believe and thereon allege that defendants misrepresented and/or omitted pertinent facts or insurance policy provisions relating to coverages at issue.

88. Plaintiffs are informed and believe and thereon allege that defendants failed to acknowledge and act with reasonable promptness upon communications with respect to claims arising under the Bankers Policies.

89. Plaintiffs are informed and believe and thereon allege that defendants failed to adopt and implement reasonable standards for the prompt investigation of claims arising under the Bankers Policies.

90. Plaintiffs are informed and believe and thereon allege that defendants refused to pay claims without conducting a reasonable investigation based upon all available information.

91. Plaintiffs are informed and believe and thereon allege that defendants failed to affirm or deny coverage of claims within a reasonable time after proof of loss statements had been completed.

92. Plaintiffs are informed and believe and thereon allege that defendants did not attempt in good faith to effectuate prompt, fair and equitable settlements of claims in which liability is reasonably clear.

93. Plaintiffs have reason to believe that defendants compelled Insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by Insureds.

94. Plaintiffs are informed and believe and thereon allege that defendants attempted to settle a claim for less than the amount to which a reasonable person would have believed he was entitled by reference to written or printed advertising material accompanying or made part of an application.

95. Plaintiffs are informed and believe and thereon allege that defendants failed to promptly settle claims, where liability was reasonably clear, under one portion of the insurance policy coverage or another in order to influence settlements under other portions of the insurance policy coverage.

SECOND AMENDED COMPLAINT

96. Plaintiffs are informed and believe and thereon allege that defendants failed to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

## SIXTH CAUSE OF ACTION

**(Failure to Advise On or Secure Coverage – Against BBVA Compass)**

97. The Harrisons incorporate by reference all of the allegations above.

98. The BBVA agent misrepresented the nature, extent or scope of the coverage being offered or provided.

99. The Harrisons made a request or inquiry for a particular type or extent of coverage, which BBVA omitted and failed to deliver.

100. The agent assumed an additional duty by either express agreement or by "holding [her]self out" as having expertise in a given field of insurance being sought by the insured, particularly in given field of insurance being sought by the Insureds.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendants as follows:

1. For all recoverable damages according to proof for Defendant Bankers' breach of contract of not less than $455,953.47 plus interest at the legal rate from the date of Plaintiffs' claim.

2. For all recoverable damages according to proof in the amount of not less than $455,953.47 plus interest at the legal rate from the date of Plaintiffs' claim for the Defendants' first party insurer bad faith and punitive damages.

3. For an order declaring:

    a. The Bankers Policies obligate Defendants Bankers to pay the claim in the full amount of the replacement value of the property regardless of any special limitation or policy limit in the American Family policy;

        b.     The Plaintiffs have complied with their duties under the Bankers Policies or, in the event Plaintiffs did not comply with their duties such noncompliance does not prevent plaintiffs from recovering under the Bankers Policies.

4. For emotional distress.

5. For attorneys' fees incurred to force Defendants to pay the policy benefits (Brandt fees).

6. Punitive damages.

7. For costs incurred herein.

8. For such other relief as the court deems just and proper.

PLAINTIFFS DEMAND A JURY TRIAL

Date: March 28, 2014                      INTERNATIONAL LAW GROUP, A.P.C.

                                            /s/ James B. Panther
                                            James B. Panther
                                            Attorney for Plaintiffs
                                            JACK D. HARRISON and NAOMA HARRISON